**SO ORDERED.**

**SIGNED this 25 day of October, 2011.**



                            **Stephani W. Humrickhouse**
                            **United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

**IN RE:**                                                            **CASE NO.**

**CROATAN SURF CLUB, LLC**                        **11-00194-8-SWH**

      **DEBTOR**

### ORDER ON VOTING RIGHTS

The matter before the court is Royal Bank America's Motion to Determine (A) Rights of Royal Bank to Vote the Claim of Edwards Family Partnership, L.P., (B) Whether the Edwards Family Partnership L.P. is an Insider of the Debtor for Purposes of Section 1129(a)(10) of the Bankruptcy Code, and (C) the Classes of Creditors with Regard to the Debtor's Amended Plan of Reorganization. Prior to the hearing held in Raleigh, North Carolina, on September 7, 2011, RBA withdrew that portion of its motion pertaining to insider status determination. At the close of the hearing, the court ruled, in open court, that RBA did not have authority to vote the claims of the Edwards Family Partnership, L.P.[1] This opinion sets out the bases for that ruling.

Croatan Surf Club, LLC owns a 36-unit condominium building in Kill Devil Hills, North Carolina. The construction of the condominium project was financed primarily by a December 20,

---

[1] Based on this ruling, the court did not reach RBA's motion to determine the classification of the claims of RBA and EFP, but determined that for purposes of voting, EFP's claim was not less than $3,000,000.

2007 loan from Royal Bank America ("RBA") for $17,000,000, which is secured by a first priority deed of trust on the property. On the same date, Edwards Family Partnership, LP ("EFP") provided mezzanine financing of $3,000,000, in exchange for a junior deed of trust on the property.

On December 31, 2007, RBA, the debtor and EFP entered into a Subordination and Inter-Creditor Agreement (the "Subordination Agreement") in which RBA consented to the debtor granting EFP a subordinate deed of trust, subject to the terms and conditions set forth in the Subordination Agreement. The Subordination Agreement contains several provisions which essentially and expressly subordinate the priority and right to payment of EFP to RBA. It also contains provisions which provide that upon the filing of a bankruptcy petition by the debtor, RBA is "empowered . . . to file claims and proofs of claim and take such other action (including, without limitation, voting the Subordinate Debt . . .) as it may deem necessary or advisable for the exercise, enforcement or preservation of any of the rights or interests of [RBA] hereunder." Subordination Agreement, ¶ 10, 11.

The debtor filed a chapter 11 petition on January 10, 2011. RBA filed a proof of claim on February 16, 2011, in the amount of $19,059,327.40, which was amended on June 1, 2011 to reflect a claim of $20,108,549.43. RBA also filed a proof of claim for EFP in the amount of $3,000,000 on February 16, 2011. EFP filed its own proof of claim on May 10, 2011, in the amount of $3,765,291.57.

On January 14, 2011, the debtor filed a plan of reorganization which separately classifies the RBA secured debt (Class 6), the EFP secured debt (Class 7) and provides that any unsecured portion

of the EFP debt will be treated in Class 9.[2]  RBA voted to reject its Class 6 treatment, EFP's Class 7 treatment and EFP'S Class 9 treatment.  EFP filed its own ballots accepting both its Class 6 and Class 9 treatments.

Section 510(a) provides that:

> [a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

11 U.S.C. § 510(a).  In this case, the parties acknowledge that the subordination agreement must be enforced as it would be under Pennsylvania law.  Subordination agreements are enforceable under Pennsylvania law.  13 Pa.C.S. §9339 (2011).

Both § 510(a) and Pennsylvania law recognize the enforceability of agreements which contractually arrange the respective priority of debts, liens and payment of claims, and this court has no basis upon which to rule otherwise.  However, § 510(a) was not intended to give parties *carte blanche* to override other provisions of the Bankruptcy Code.  This is evident in the language of § 1129(b) which allows a court to confirm a plan if it "does not discriminate unfairly, and is fair and equitable," "notwithstanding section 510(a) of this title."  11 U.S.C. § 1129(b).  The meaning of the phrase 'notwithstanding section 510(a) of this title' was explained by the court in In re TCI 2 Holdings, LLC, in which a party contended that the debtor's plan could not be confirmed because it violated an intercreditor agreement, and therefore was inconsistent with § 510(a).  428 B.R. 117 (Bankr. D.N.J. 2010).  In overruling the objection, the Honorable Judith H. Wizmur found that:

> [t]he only logical reading of the term 'notwithstanding' in section 1129(b)(1) seems to be: "Even though section 510(a) requires

---

[2]An amended plan was filed on January 19, 2011, which did not alter this classification system.

> the enforceability of subordination agreement in a bankruptcy case to the same extent that the agreement is enforceable under nonbankruptcy law, if a nonconsensual plan meets all of the § 1129(a) and (b) requirements, the court 'shall confirm the plan.'" The phrase "notwithstanding section 510(a) of this title" removes section 510(a) from the scope of 1129(a)(1), which requires compliance with "the applicable provisions of this title."  11 U.S.C. § 1129(b)(1).

Id. at 141.  Therefore, a court can confirm a plan which disrupts bargained for priority, and thus is inconsistent with the terms of a subordination agreement, as long as it is fair and equitable and does not discriminate unfairly.

Section 510(a) similarly does not override § 1126(a), which provides that the "holder of a claim" may vote to accept or reject a plan under chapter 11.  The language of the Bankruptcy Code dictates who may vote on a plan.  Subordination does not change the existence of the debt or claim or its holder; it merely provides for a different order of payment.  See Collier on Bankruptcy ¶ 510.02[1], at 510-5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2009) ("Subordination is a remedy in which the order of payment rather than the existence of the debt is in issue.").  EFP is the holder of its claim, and therefore EFP is entitled to vote its claim.  There is no reason to deviate from the plain language of § 1126(a).  In re 203 North LaSalle St. Pshp., 246 B.R. 325 (Bankr. N.D. Ill. 2000) citing In re Hart Ski Mfg. Co., 5 B.R. 734, 736 (Bankr. D. Minn. 1980) (There is no indication that Congress intended to allow creditors to alter by a subordination agreement the bankruptcy laws unrelated to distribution of assets).   As stated by the Honorable Eugene R. Wedoff in LaSalle:

> Although a creditor's claim is subordinated, it may very well have a substantial interest in the manner in which its claim is treated. Subordination affects only the priority of payment, not the right to payment. If the assets in a given estate are sufficient, a subordinated claim certainly has the potential for receiving a distribution, and Congress may well have determined to protect that potential by

> allowing the subordinate claim to be voted. This result assures that the holder of a subordinated claim has a potential role in the negotiation and confirmation of a plan, a role that would be eliminated by enforcing contractual transfers of Chapter 11 voting rights.

LaSalle, 203 B.R. at 332.

RBA further argues that Rule 3018(c) allows it to vote EFP's claim. The court adopts the concise reasoning set forth in the LaSalle opinion, and determines that Rule 3018(c) does not authorize RBA to vote EFP's claim. In construing Rule 3018(c), Judge Wedoff noted that although a ballot accepting or rejecting a chapter 11 plan may be signed by an 'authorized agent' of the creditor or equity security holder, agency involves action at the direction of a principal, i.e., the "existence of the right to control the method or manner of accomplishing a task." Id. (citation omitted). Here, as in LaSalle, the purported agent (RBA) would not be acting at the direction of EFP, but rather would be acting out of self interest, and therefore RBA cannot be seen as EFP's agent under Rule 3018(c).

The court has previously determined that the collateral serving as security for both RBA and EFP's debt should be valued at $18,500,000. In light of that determination, EFP may very well have a secured claim and most certainly will have an unsecured claim. EFP therefore has a substantial potential for receiving a distribution in this case, even if the claim of RBA must be satisfied in its entirety before any monies are paid to it. The interests EFP has in the potential for that distribution should be protected through the right to vote its claim(s) and negotiate its treatment.

Accordingly, RBA's motion to vote EFP's claim is **DENIED.**

**SO ORDERED**.

**END OF DOCUMENT**