Case 11-00194-8-SWH    Doc 366    Filed 01/12/12    Entered 01/12/12 15:37:23    Page 1 of 9

**SO ORDERED.**

**SIGNED this 12 day of January, 2012.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **CROATAN SURF CLUB, LLC** | **11-00194-8-SWH** |
| DEBTOR | |

### ORDER DENYING RELIEF FROM THE AUTOMATIC
### STAY REQUESTED UNDER 11 U.S.C. § 362(d)(3)

The matter before the court is Royal Bank America's Motion for Relief from Stay pursuant to 11 U.S.C. § 362(d). A hearing was held in Raleigh, North Carolina, on December 12, 2011. To facilitate the progress of the case, the court emailed a notification of its ruling to the parties on December 20, 2011, informing them that to the extent that the bank's motion is based upon § 362(d)(3), the motion is denied. This opinion sets out the bases for that ruling.

Debtor Croatan Surf Club, LLC owns a 36-unit condominium complex in Kill Devil Hills, North Carolina, the construction of which was financed primarily by a December 20, 2007 loan from Royal Bank America ("RBA"). The debtor filed a petition under chapter 11 on January 10, 2011, filed its original plan on January 14, 2011, and then filed an amended chapter 11 plan on January 19, 2011. RBA filed a proof of claim on February 16, 2011, in the amount of $19,059,327.40.

The debtor filed a Second Amended Plan on February 18, 2011. That same day, RBA filed its Motion for Relief from Stay pursuant to §§ 362(d)(1), (2), and (3), in which it asserted, *inter alia*, that a plan could not be confirmed within a reasonable amount of time in light of RBA's intent to ballot its claim and the claim of the Edwards Family Partnership ("EFP"), a creditor whose claim RBA contended it was entitled to vote pursuant to a subordination agreement, against confirmation, thus depriving the debtor of an accepting impaired class. RBA's motion was originally addressed in a status conference on March 10, 2011, and then first set for hearing on May 16, 2011. Since that time, the hearing on the stay motion has been continued multiple times with RBA's consent.

On October 25, 2011, the court entered an order determining that RBA was not entitled to vote EFP's claim.[1] The debtor filed a Third Amended Plan and an amendment to its disclosure statement three days later, on October 28, 2011. This amended plan essentially only modified the debtor's proposed treatment of RBA by correcting the claim amount and providing that the lender would retain its existing liens and priority until its secured claim was paid in full. On November 3, 2011, the hearing on the disclosure statement and stay motion set for November 14, 2011 was cancelled, and both subsequently were rescheduled for December 12, 2011.

Soon after the filing of the Third Amended Plan and amendment to the disclosure statement, RBA notified the court and the debtor that it would no longer consent to the continuation of the stay and that it intended to proceed with the hearing on its stay motion on the December 12, 2011 hearing date. It filed a supplemental brief on December 9, 2011, asserting that the lack of a "still-existing" plan filed within the 90-day period provided an additional ground for termination of the stay under § 362(d)(3). RBA argued that the Second Amended Plan, which was filed within the 90-day period,

---

[1] Order on Voting Rights, docket no. 282.

was the only plan this court could consider for purposes of determining the debtor's compliance with the statute, such that *the consequence of the debtor filing an amended plan* meant that the debtor no longer had a timely-filed plan with a reasonable possibility of being confirmed. Accordingly, to RBA, this meant that the debtor was not in compliance with § 362(d)(3) and relief from the stay was mandatory. After the hearing, the court indicated in an email to all parties that the motion for relief from stay would, to the extent that it relied on § 362(d)(3), be denied. The debtor subsequently filed its Fourth Amended Plan, accompanied by a Third Disclosure Statement, on December 23, 2011.[2]

## DISCUSSION

For purposes of this order, the court is addressing only RBA's contentions under § 362(d)(3). RBA did move under other subsections of the statute as well but the court, having determined that § 362(d)(3) presents a threshold issue, will decide that issue and review the remainder of the motion at a later date. Section § 363(d)(3) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> * * *
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later–
>
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>>
>> (B) the debtor has commenced [interest] monthly payments . . . .

---

[2] At the hearing, the court allowed the debtor until December 23, 2011 to file an amended disclosure statement and plan if the stay motion was denied under § 362(d)(3).

11 U.S.C. § 362(d)(3). The statute thus requires allowance of the stay motion, in a single asset real estate case, unless within 90 days of entry of the order for relief, the debtor has filed a plan that has a reasonable possibility of being confirmed within a reasonable time or the debtor has commenced interest payments. The statute mandates relief through use of the directive "shall," but the exact nature of the relief from stay (i.e. whether the stay is terminated, annulled, modified, or conditioned, all of which are listed as examples within the statute) lies within the discretion of the court. See In re Hope Plantation Group, LLC, 393 B.R. 98, 104 (Bankr. D.S.C. 2007) (holding that the court "has discretion to fashion appropriate relief and is not necessarily required to terminate the stay outright"); In re Crown Ohio Investments LLC, 2010 WL 935576 *3 (Bankr. E.D.N.Y. 2010) (holding that the court "has discretion to determine whether the debtor complied with Section 362(d)(3) and to determine the extent of the relief sought"). In this matter, the debtor has not made monthly interest payments, and the issue before the court is whether the debtor has satisfied the "confirmable plan" inquiry set out in § 362(d)(3)(A). For the reasons that follow, the court concludes that the debtor has done so.

RBA contends that "[t]he purpose of § 362(d)(3) is to incentivize [sic] a single asset real estate debtor to file *and confirm* a plan with a reasonable possibility of confirmation in a timely manner." Supplement to Motion of RBA for Relief from Automatic Stay at ¶ 19 (emphasis added). This overstates the statute because, in fact, the statute does not set forth any specific time constraints with respect to *confirmation* of the plan. It merely requires that the plan that is filed within the statutory time period have a "reasonable possibility of being confirmed within a reasonable time," not that the plan actually be confirmed by a certain time. § 362(d)(3)(A). The court can agree, however, that when the debtor elects not to make monthly interest payments, § 362(d)(3)(A) works

to "bring some additional expediency to the process in these circumstances," Supplement to Motion of RBA for Relief from Automatic Stay at ¶ 19, by requiring that a plan be filed within 90 days. And, the statute requires not just any plan, but a plan that 1) has a reasonable possibility of confirmation, 2) within a reasonable time.

I.      RBA's Argument that the Second Amended Plan was "Patently Unconfirmable"

The court agrees with RBA that the Second Amended Plan, being the plan that was filed within 90 days, is the plan upon which the court must rest its decision in this matter. Section 362(d)(3) is intended to operate prospectively, by prompting a quick decision by the SARE debtor to file a plan within 90 days, or to pay interest. The statute thus requires a SARE debtor to leap off of the chapter 11 blocks by making meaningful reassurances to the creditor secured by that real estate, whether the reassurance comes via monthly interest payments or the prompt filing of a plan. See In re Archway Apartments, Ltd., 206 B.R. 463, 465 (Bankr. M.D. Tenn. 1997) (pointing out that "[t]he legislative history behind the enactment of this particular provision is meager," but that its apparent purpose was to "impose expedited time frames for filing plans in single asset real estate cases").

In this matter, the debtor filed its Second Amended Plan well within the 90-day window. RBA filed a motion for relief from stay under § 362(d)(3) on grounds that the plan had "no reasonable possibility of confirmation." RBA argued that it was entitled to vote the EFP claim along with its own in opposition to the plan. Accordingly, RBA reasoned, there were no possible impaired existing classes sufficient to proceed to cram down, meaning the plan had no reasonable possibility of being confirmed and thus was, from RBA's perspective, patently unconfirmable. RBA's initial § 362(d)(3) argument thus focused its assessment that an impaired accepting class was lacking.

5

Subsequent to RBA's assertion of that argument, however, the court ruled that RBA was not entitled to vote the EFP claim, thereby removing the main underpinning of RBA's argument. RBA had other objections to the plan as well, but none of them could, even if well founded, have shown the plan to be so patently unconfirmable that there was no "reasonable possibility" of confirmation. See In re Hope Plantation Group, LLC, 393 B.R. 98, 104 (Bankr. D.S.C. 2007) (noting that "the terms 'reasonable likelihood,' and 'reasonable possibility' within a 'reasonable time' are rather vague and hopeful terms"). In this case, the debtor promptly filed a plan with a fair possibility of being confirmed within a reasonable period of time, and RBA received the quick action to which it was entitled.

Because the debtor fully complied with the statute, there is no basis in this case, under these facts, on which the court should lift or otherwise modify the automatic stay. The operation of § 362(d)(3)(A) has been at issue in several recent decisions from this district, and in all of those, the court found grounds to lift the stay in its entirety. In In re Highway 751 Partners, LLC, 2010 WL 702266 (Bankr. E.D.N.C. Feb. 22, 2010), the court determined that the debtor failed to file a confirmable plan prior to expiration of the 90-day deadline. The debtor then reworked the plan and submitted affidavits of support of the amended plan, all of which it filed after expiration of the 90 days. The court lifted the stay, holding that the "plan provides different treatment of the secured creditor and may or may not be confirmable even with those votes." Id. at *1; see also In re Carolina Commons Dev., L.P., 2010 WL 1965895 at *2 (Bankr. E.D.N.C. May 17, 2010) ("The provisions of § 362(d)(3) are mandatory: in a single asset real estate case the court *shall* grant stay relief from the stay unless the debtor files a confirmable plan of reorganization or commences monthly interest payments within 90 days of the bankruptcy filing.").

In another case, the court concluded that "[t]he Plan is not confirmable, in that it is not feasible within the meaning of 11 U.S.C. § 1129(a)(11), and the Plan is commercially unreasonable, no impaired class has accepted the plan, and the proposed treatment of the [secured creditor's] claim is not fair and equitable." In re Northern Outer Banks Assocs., LLC, 2010 WL 4643721 at *3 (Bankr. E.D.N.C. Nov. 8, 2010). Even though, in that case, the plan had been filed just inside the 90-day deadline and the debtor had made an interest payment (though it made only one, then payments lapsed), the court lifted the stay in its entirety because the plan was "not confirmable."

What those cases have in common, and the way in which they differ from the instant case, is that there was either no timely plan, or the plan was timely but was, for one reason or another, patently unconfirmable. In this case, the debtor filed a timely plan and satisfied its burden of establishing that the plan had a reasonable possibility of being confirmed within a reasonable amount of time.

II. RBA's Argument that Second Amended Plan was Nullified by Third Amended Plan, Rendering Compliance with § 362(d)(3)(A) Impossible

In a supplemental brief filed before the December 12 hearing, RBA also asserted a new argument – that the Third Amended Plan, filed almost seven months after expiration of the § 362(d)(3) deadline, supplanted and negated the Second Amended Plan, such that the prior, timely plan was "no longer in 'prospect.'" Supplement to Motion of RBA for Relief from Automatic Stay at ¶ 17. RBA contends that "[i]n determining whether to lift the automatic stay under § 362(d)(3) of the Bankruptcy Code, the only plan that this Court may consider is a plan filed within 90 days of the Petition Date." Supplement to Motion of RBA for Relief from Automatic Stay at ¶ 15. The court agrees with that premise, but not the creative conclusion that RBA then goes on to draw: Because the Second Amended Plan is no longer "in prospect," RBA posits, this change of its status

7

somehow retroactively negates its existence, thus operating (again, retroactively) to preclude the debtor's ability to comply with the statute. RBA cites no statutory support or caselaw for this proposition, and the court is not persuaded. To the contrary, the court discerns no time warp effect to this statute, and instead understands it to operate prospectively: The statute sets forth what a SARE debtor must do and the time frame in which to do it. If the debtor complies, then subsequent amendments to the plan will not "undo" that prior compliance. RBA's interpretation of the statute would lead to the dramatic conclusion that SARE debtors may not amend their plans more than 90 days after filing their petitions, and this court has no basis on which to decide such a momentous question.[3]

Further, under the circumstances of this case, application of § 362(d)(3) to terminate the stay at this late date would not uphold the goals of the statute. The purpose of § 362(d)(3) is to focus the court on the prospects of reorganization during the early stages of a single asset real estate case so as not to prejudice the secured creditor by delay where reorganization efforts are futile, and it is incumbent upon that secured creditor to see that its motion under that section is heard quickly. Section 362(e) provides that the stay terminates thirty days after the filing of a motion for relief from the stay unless the secured party consents to an extension of that time period. RBA consented to the extension of the thirty-day period for over eight months, thereby negating the effectiveness and true purpose of the statute.

---

[3] It is worth noting that the Third Amended Plan (filed in October) and now the Fourth Amended Plan (filed in December) are substantially similar to the February plan, and there is no suggestion by RBA that the debtor has engaged in any delaying tactics or filed "practice" plans in order to satisfy deadlines without the intent or capability of actually, actively pursuing that earlier plan.

## CONCLUSION

In the court's view, while there may be some disagreement as to the extent to which § 362(d)(3) circumscribes the actions of a SARE debtor in the later stages of a chapter 11 case, this particular matter poses no opportunity to explore them. The debtor filed a plan that fell well within the parameters of having a reasonable possibility of being confirmed within a reasonable time, and there is therefore no basis for the court to grant relief from the stay either through termination, conditioning, or any other modification.

**SO ORDERED**.

**END OF DOCUMENT**